## G. W. Beringer and David Beringer, Executors of George Beringer, Appellants, *v.* Henrietta Lutz and Daniel Lutz, her husband.

*Husband and wife—Real estate—Resulting trust.*

The Supreme Court will not reverse a judgment on a verdict in favor of a married woman in a proceeding by a sheriff's vendee to recover possession of real estate, where the evidence tends strongly to show that title to the land in question was taken by the defendant in the execution in his own name, but that his wife paid out of her separate estate a portion of the purchase money corresponding to the interest in the land awarded to her by the verdict, with the understanding that she was to have title to the land in proportion to the money paid by her, and that she did not know that her name was not mentioned in the deed.

Argued Oct. 24, 1898. Appeal, No. 95, Oct. T., 1898, by plaintiffs, from judgment of C. P. Venango Co., April T., 1892, No. 68, on verdict for defendants. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Transcript of proceedings before a justice of the peace, and declaration in ejectment under the act of June 16, 1836. Before HENDERSON, P. J.

At the trial it appeared that the plaintiffs were the sheriff's vendees of 110 acres of land in Clinton township, sold as the property of defendant, Daniel Lutz, husband of Henrietta Lutz. At the sale Henrietta Lutz gave notice that she had paid $2,613 of the purchase money, and claimed the property. The evidence for the defendants tended to show that she had paid over $2,000 of the purchase money, with the understanding that she was to have title to the land in proportion to the amount of purchase money paid by her, and that she was ignorant of the fact that she was not named in the deed, and further that she had received from her father and her father's estate a sum in excess of that which she claimed she had paid as part of the purchase money of the land in controversy.

The court charged in part as follows :

The evidence presented by the defense, however, introduces an allegation and claim which, if properly supported, is valid

in law, and authorizes the defendant, Mrs. Lutz, to remain in possession of as much of the lands as she may show she is the owner of, and this, notwithstanding the fact that she has no deed for any part of it.   It is a principle of law well recognized in the administration of justice that one may have an equitable title in the land, that is, the legal title may be vested in one person and the beneficial interest in the land may inure to another person, who may be named in the deed or who may not be named at all, whose right may exist by parol, that is by the word of mouth, not shown by any written evidence.   It is such a title as that to which reference has just been made which Mrs. Lutz sets up in this case.   She says, although the deed to this land was in her husband, Daniel Lutz, that in fact she paid $2,000 of the purchase money; that it was money derived from a source independent of her husband; that he never owned it, never had any interest in it, and that the money so paid by her through her husband, with the express arrangement or agreement that she should become the owner of the land; that she expected to pay for the whole of the land, but that in any event it was agreed between her and her husband that she was to have an interest in the land proportionate to the amount of money that she might pay; and that in pursuance of this arrangement she actually paid $100 on the article of agreement; that afterwards, within a few months, when the deed was delivered, she paid $1,000 more; that she paid $400 the year following, and $500 in July of the succeeding year. She says the money she so paid was money derived from her father's estate, directly and indirectly; that in 1860, soon after she married, her father made a proposition to her to take a piece of land which he then owned, or was about to acquire title to, of nearly thirteen acres in Lawrence county, where her home was and her father lived, and that he proposed if she would take this land and remain there and improve it, he would make a gift of it to her in anticipation of the distribution of his estate.   Such a gift is known in the law as an advancement, where a parent, anticipating the distribution of his estate after his death, pays over to one of his children a portion of his estate, with the understanding that it was to be charged up to the child after his death and taken out of her share of the estate.   Such a gift is known in the law as an advancement,

and it is alleged by Mrs. Lutz that she accepted these thirteen acres as an advancement; that it was expressly declared by her father at the time that it should be a portion of her estate, to be accounted for by her in the distribution of his estate after his death; and that instead of making the conveyance to her, it was made to her husband, because of a misapprehension of her father as to the right of a married woman to acquire real estate or enter into contracts or obligations; that the father, supposing the daughter could not take a conveyance directly from him and hold the land, proposed that it be deeded to her husband, and that the husband, in view of that supposition, and in view of this arrangement, agreed to accept the land in trust for his wife, to hold it for her and give her the benefit of it, and she to be charged with the value of it and to account for it at the settlement of her father's estate.    [She says further that the thirteen acres of land was valued by her father at the time, at $400, and charged her for that amount, and for the purpose of preserving a memorandum or evidence of the valuation of the land, and the fact that the daughter was to be charged by the executors of the father with the amount of the value of the same, that a note was given by her husband, Daniel Lutz, to the father; that at the suggestion of the father and by express understanding the note was not to be evidence of a consideration to be paid by either Daniel Lutz or the daughter, but was to be a visible evidence after the father's death, to the executors, of the amount of the advancement which the father had then made, and that the note was then given by Daniel Lutz upon this understanding; that the note was given by Lutz, and that an article of agreement was entered into at that time for the land,] [2] and in 1865, a conveyance was made by Caleb Pyle, the father, to Daniel Lutz, by the operation of which as claimed by the daughter, Mrs. Lutz, a title vested in her in equity to the whole of the thirteen acres, and that Daniel Lutz was merely a trustee holding for her, although he had a form of conveyance, which upon its face gave to him apparently an absolute title to the land.    The law is, gentlemen, that if Caleb Pyle, the father, did so propose to convey these thirteen acres of land to his daughter as a part of the share which she was to receive out of the estate, and did so convey it to Daniel Lutz, the husband, because he thought the daughter was not competent in law to

accept the estate, and if it was the arrangement the land was not to be paid for by Daniel Lutz, but was to be accounted for by the daughter in the distribution of the father's estate, and the land was so accepted by her and Daniel Lutz, and so held by Daniel Lutz, a title did vest in Mrs. Lutz to the whole of the thirteen acres, an equitable title, and Daniel Lutz became, on the facts as testified to by him and his wife and by the other witnesses, a trustee merely for her, and she would be entitled to the proceeds of the land when it was sold, would be the owner thereof, and might use and dispose of the estate independently of her husband and free from his direction or control, and whatever lands she afterwards acquired by purchase with this money she could hold, if it was acquired by her direction, and with the intention on her part to acquire an estate in the land. It becomes important for you, therefore, gentlemen, to examine the evidence bearing upon this aspect of the case, and the further evidence to which your attention is now called, as involved in the allegation of the defendants. [This thirteen acres of land, along with another piece of land belonging to the husband, was sold in 1883, for $1,900. One thousand four hundred dollars of this, as claimed by the wife, and as admitted by Daniel Lutz, and as shown by some other evidence in the case, was the share coming to Mrs. Lutz from the thirteen acres.] [3] The defendants allege that it was agreed between the husband and wife that the proper proportion of Mrs. Lutz out of the proceeds of the thirteen acres, and the other seven acres, was $1,400, and she says she received that amount, $450 at the time the bargain was made for the sale of the land, and the remainder when the deed was delivered, and that she had that $1,400 in her possession secured in the manner in which she has narrated. A part of this $1,400 she says she gave to her husband when he came to Venango county to buy the Porter land, the amount of $100. She says her husband came here to buy the land for her, by her direction. She alleges that she not only had the $1,400, but she had in anticipation a further sum from her father's and mother's estates, which the evidence tends to show was in the aggregate $2,600. She says she not only paid the $100 at the time the article of agreement was entered into, but that when the next payment became due in the spring following, she gave $1,000 of this $1,400 to

her husband, to be used as so much of the purchase money on the land, and that the money was so paid, and that the deed was then delivered by Mr. Porter to her husband, and brought by her husband to her; that she did not know that she was not named in the deed; that she never read the deed, but that she put it away in the house. If she did not read the deed or know that her name was omitted therefrom, it would not be a material fact in the case. If the money was her separate estate when it was paid by her husband at the time of the payment of the money, and the payment of the amount due at the time the deed was delivered, if her money was so paid, by her direction, with the intention on her part of acquiring an interest in the land, she acquired an interest for that portion irrespective of the question whether she was named in the deed or not. She offers evidence also tending to show that in the year following, in 1884, she paid $400, the next payment due on the land, and in July, 1885, $500, making in all $2,000 of the total purchase money, that is, about $2,900 or a little less than that. The proportion which she paid of the whole amount was sixteen twenty-thirds according to her testimony and that of the witnesses who corroborate her.

This résumé of the evidence, gentlemen, brings you to the marrow of this case. First, did Mrs. Lutz have a separate estate in money with which she might buy this land? Secondly, was this money given by her to her husband to acquire a title in the land? Thirdly, was the money so paid by her husband for her in acquisition of the title? If these questions are answered in the affirmative, the defendants are entitled to a verdict, and the plaintiffs would only be entitled, by virtue of the sheriff's deed, to secure seven twenty-thirds of the farm. It is proper for you, however, in determining the question whether Henrietta Lutz was the owner of the money, acquired in the manner in which she says it was acquired, and whether it was paid by her direction, as is alleged, through her husband, to observe a rule regulating the subject of the weight of evidence by which you should be guided in such cases. It is the rule that where one sets up an equitable title against a legal title, that is applied in this case, where Mrs. Lutz, not having a deed, alleges that she is the owner of a portion of this farm, against her husband, who had a deed for the whole of the land, the law

requires something more than the preponderance of evidence. It requires that her case be made out by clear and satisfactory evidence, such as enables you to be reasonably and satisfactorily assured that her allegation as to the interest which she has in the land is true. [For the purpose of exhibiting to you such a weight of evidence as would warrant you in saying that the evidence is clear and satisfactory, and that she paid the money in the manner claimed by her, she offers the evidence, first of herself; secondly of her husband, thirdly of her brother, one of the executors of the will of her father, fourthly that of her brother-in-law, another executor, and fifthly the testimony of Mr. Francis, who lived at the time in the family and alleges he was conversant with the transactions which resulted in the acquisition of the Porter farm. These witnesses testify, some of them directly, as to what took place at the time the conveyance was made by Caleb Pyle, the father, to Daniel Lutz, in the matter of the conveyance of the thirteen acres in Lawrence county. Mr. Pyle, one of the executors, corroborates the testimony of Mrs. Lutz and her husband in regard to that transaction. Mr. Dindinger does the same, in testifying to declarations made by Caleb Pyle at different times to him, in which he declared these notes that were given by Mrs. Lutz, or by her husband with her, should be charged to her estate, that it was an advancement made by him, and that the note given was a memorandum of the amount of the advancement which he made.] [4] This evidence, if believed by you, gentlemen, is sufficient to warrant you in the conclusion that the thirteen acres of land conveyed by Caleb Pyle to Daniel Lutz in Lawrence county was an advancement by him to his daughter, intended to be a share of his estate vested in her, and if the transaction were of that nature, Mrs. Lutz was the owner of the thirteen acres, had a good title to it in equity, and the proceeds of the sale of it became her property absolutely and subject to her control. If she afterwards took this $1,400, and an additional sum which she received from her father's or mother's estate, and invested it in the Porter land, on an arrangement that it was to be bought in her interest, and she to have a share in it in proportion to the amount of money she put in it, she has a good title to the proportion of the farm which she paid for, and can successfully

defend it against the action of the plaintiffs, who seek to recover possession of the whole of the farm.

It will be your duty in considering the testimony to examine the testimony of the witnesses, consider the manner of their evidence, their opportunity for knowing, their apparent candor or lack of candor, their apparent knowledge of the facts of which they testify, and give such credit to the testimony of the witnesses as you may think they are entitled to, after such a consideration of the witnesses, the manner of their testimony and the subjects concerning which they testify. It is contended on the part of the plaintiffs, in reply to this contention of the defendants, that there is not sufficient evidence to warrant you in reaching the conclusion that Mrs. Lutz has an equitable interest in this Porter farm. They ask you to do so, first, because the conveyance by Caleb Pyle to Daniel Lutz of the thirteen acres in Lawrence county was a conveyance in the usual form, and was to Lutz and not to his daughter; that Lutz gave a note to Pyle for the $400, which, they allege, was a consideration for the land, and that the transaction, therefore, was a purchase by Lutz and not a gift by Pyle to his daughter. Where a deed is made by one to another and an obligation given for the purchase money, the law raises a presumption that the conveyance vests the absolute title in the one to whom the deed is given. But this is a disputable presumption; it is not a conclusive presumption, and it will be important for you to keep that distinction in your minds, gentlemen. When Caleb Pyle gave the deed to Daniel Lutz the presumption arose from the form of the deed that the conveyance was an absolute one to Daniel Lutz, and the same is true with reference to the conveyance by Mr. Porter to Daniel Lutz. These presumptions may be overcome, however, by parol evidence, and it is for the purpose of replying to these presumptions that the parol evidence of the defendants is introduced. The plaintiffs say that these presumptions, arising from the form of conveyance by Caleb Pyle to Daniel Lutz, and by James Porter to Daniel Lutz, are sufficient to warrant you in concluding that the conveyance was intended as a deed to Lutz in each instance; that he was the owner of the land; that there was no equitable estate created in Mrs. Lutz, and no intention to create one; and that you ought not to allow the parol evidence to overcome the

legal presumptions, and that question is submitted to you, gentlemen, for your consideration.   Does the evidence presented by the defendant, Mrs. Lutz, satisfy you that the thirteen acres were so advanced by her father to her?   Does the evidence introduced by her lead you to a satisfactory conclusion that out of the proceeds of the thirteen acres, if you should find it was so advanced by her father, she took money and applied it toward the purchase of the Porter farm with the intention of acquiring an interest therein?   [Does it lead you to a satisfactory conclusion that with additional money advanced by her brother she paid the additional payments of the farm until she had invested therein $2,000?   Is there any evidence that any other person paid any of this $2,000 except Mrs. Lutz?]   [5]

It is said by the plaintiffs in reply to the allegation, in addition to the evidence as to the presumptions arising from the form of the conveyances, that there is evidence that, as to the $400 and $500 advanced by Mr. Pyle, the executor, on two occasions, to be applied in payment of portions of the purchase money of the farm, the acts of the parties themselves indicate that that, at least, was not a portion of her estate or intended so to be, and in support of that contention there is first brought to your attention the fact that Daniel Lutz gave a note for the $400, with his wife as a signer, and that he gave his own note without any signer in 1865; and that on October 19, 1885, Mr. Pyle procured an assignment from Mrs. Lutz of her interest in her father's estate as security for two notes, or for some notes at any rate, which he held against Daniel Lutz, and these two notes, as I recall the assignment, are specifically named, and you are asked by counsel for the plaintiffs to conclude that the fact that notes were taken for this sum of $400 and $500, and that an assignment was afterwards procured from Mrs. Lutz for her share in her father's estate for security, is evidence by the parties at the time that those two sums, at least, were not delivered by J. L. Pyle to Daniel Lutz on account of his wife's interest in her father's estate, and the evidence is admissible, to be taken in consideration by you, as bearing on that proposition.   In view of this evidence, however, it is alleged by the defendant that she was not entitled to receive this $400 and $500 until her mother died; that her mother was to receive the interest on these sums, and that the

executors, being bound to pay the interest to her mother, would be justified in taking notes for the two sums in order that they might have some means of securing the interest, and if it were not paid, to compel the return of the principal in order that they might make good and pay from time to time to the widow the amount which had been provided for by the will of Mr. Pyle. [You will observe that Caleb Pyle died in 1881. His widow did not die until 1890. This assignment was made in 1885, some five years before she died. If, therefore, the executor was to anticipate the death of Mrs. Pyle, and to pay over to Mrs. Lutz her share of the fund which remained under the executor's control during the life of the widow, he would be justifiable in taking security to protect himself in the recovery of the interest from time to time, and if that were not paid, in recalling the principal fund itself, in order that he might make himself whole and avoid personal liability by reason of an improper disposition of the money.] [6]

Verdict and judgment for Henrietta Lutz for sixteen twenty-thirds of the land in controversy. Plaintiffs appealed.

*Errors assigned* among others were (2–6) above instructions, quoting them.

*T. J. McKean,* for appellants.—The court magnified the evidence and theory of the defendants, and minimized the plaintiffs' evidence and side of the case. Such a charge is one-sided, inadequate and misleading, and is error: Penna. Canal Co. v. Harris, 101 Pa. 80; Reichenbach v. Mary G. Ruddach, 127 Pa. 564; Philadelphia Trust, etc., Co. v. Philadelphia & Erie R. R., 177 Pa. 38; Herrington v. Guernsey, 177 Pa. 175; Lerch v. Bard, 177 Pa. 197.

*J. S. Carmichael,* with him *R. W. Dunn,* for appellees.—If as a whole the charge was not calculated to mislead there is no error: Reeves v. Del., Lack. & West. R. R., 30 Pa. 454; Penna. R. R. v. Berry, 68 Pa. 272; Fineburg v. Pass. Ry., 182 Pa. 97.

PER CURIAM, November 7, 1898:

The charge of the learned court below was a careful and entirely correct presentation of the facts and law involved in

the controversy. It contained a thorough explanation of the kind of testimony required to establish a resulting trust in the wife, so that the jury could not fail to have a correct understanding of the subject. There was testimony in support of the claim of a resulting trust, and that question was necessarily left to the determination of the jury. An examination of the testimony convinces us that the verdict of the jury was sustained by the evidence given on the trial. We see no error in the assignments and they are all dismissed.

Judgment affirmed.